*Little (interpleader) vs. Eddy & Beach.*

---

GEORGE D. LITTLE, (INTERPLEADER,) vs. JOS. A. EDDY & LEWIS BEACH.

Where a person in failing circumstances sells his property to one creditor, intending thereby to hinder and delay his other creditors in collection of their debts, yet the sale cannot be avoided unless the vendee had knowledge of, and was privy to the fraudulent intent.

## APPEAL from St. Louis Court of Common Pleas.

### CROCKETT & HALL, for plaintiffs in error.

The court erred in giving the instructions asked by the appellees. It leaves the question entirely out of consideration. It takes that essential element entirely away from the jury. They were instructed, that if such and such effects resulted from the sale, no matter what the intent of it, and Little knew they would result, they must find against him, when at the time these consequences are the necessary attendants in all sales, even the most honest. It cannot be true that if Chamberlin so disposed of his effects, that his creditors would be put to unusual trouble and delay in subjecting them by legal process to their debts, and that if Little knew it, the sale was void. It must have been done fraudulently to bring about that result. He had a right to put them entirely beyond the reach of creditors, if he did it honestly. Marle vs. Smith 16 Conn. 346; Harrison vs. Phillip's academy, 12 Mass. 477; 8 Johnsons 451; 1 Baldwin, 357; 18 Went. 364; Waterbay vs. Sturtevant.

II. There is error in the instruction marked 11, and given by the court of its own motion.

It leaves the question of Litlte's intent and conduct entirely out of the account. It condemns the sale, however, honest the purposes and conduct of Little simply because he must have known that Chamberlin wanted to defraud. The guilt of a participator and aider in the attempted fraud must first be fastened upon Little before his rights under the sale could be affected. To know that Chamberlin so intrusted is not sufficient. Little so knowing, must have meant to help him in it. The court had already so instructed, but virtually overrule that instruction in this. 16 Conn., 346; 9 George, 325: Harrison vs. Phillips' academy, 12 Mass. 477.

III. The court further erred in refusing the instruction marked 10 asked by the appellant. The instruction is good law. It has been sometimes given by this court. It was demanded in order to place the facts on which it was based in a proper legal light before the jury. Sibley vs. Hood, 3 Mo., 290.

IV. Both parties to the alleged fraud must concur in the illegal design. The debtor may lawfully sell his property or prefer one creditor to another with the direct intention of defrauding other creditors, but unless the creditor receives the property with the same fraudulent design, the contract is valid. 8 Wheaton 238; Maguire & Co. vs. Thompson, 1 Baldwin, 357.

The rule is that the purchaser, knowing of the judgment must purchase with the view and purpose to defeat the creditor's executions. The question of fraud depends upon the motive. Beal vs. Gunsey, 8 John., 451; Burr, 474; Waterbury vs. Sturtevant, 18 Wend., 353.

### TODD & KRUM, for defendants in error.

I. The instructions given by the court were correct and presented the law as fully as the rights of the interpleader, Little, deserved. In this case the fraud of Chamberlin stands found and abided by, and is therefore a fixed fact. The question then in this case, is whether

Little (interpleader) vs. Eddy & Beach.

Little was affected by that fraud, the same as if the interpleader of Little was tried by a different jury, with the fraud already found fixed against Chamberlin? All of the instructions asked in behalf of Little, were given but one, and that one was a mere reiteration of what was already fully contained in the instructions given. For the protection of Little, and vendee, against the charge of privity in the fraud of Chamberlin, his vendor, the instructions were unusually full and particular. 7 Mo. R. 452-3-4; 6 Mo. R. 302, 314.

II. There was no error in the court's giving an instruction to the jury after the case had been submitted to them. It was upon a point of law about which the jury desired to be further instructed. In such a case it is always the practice—the right and duty of the court to instruct. The instruction given was also in favor of Little and in the exact and strong words of this court in the case of Chouteau & Valle vs. Sherman, vol. XI, p. 389 of Mo. R.

III. The court did err in refusing to grant the motion for a new trial. Admitting that the object of Chamberlin in selling to Little was fraudulent, which the jury found and to which there is no objection, no one, it is believed, who reads, and much less, no one who was present and listened to the testimony, could reasonably doubt of Little's allowing himself to be made a party to it. The testimony is extensive, conflicting, and full of ambiguity, and marks of a dishonest scheme, and most probably involving both Chamberlin and Little and his witness French. The jury, who heard all the testimony and saw the witness, so found it. The judge who tried the case, heard all of the testimony and saw the witness testify, affirmed the finding of the jury. It is impossible for this court to judge so correctly of the proof arising from the testimony actually given in the case, as the judge and jury, who tried the case, this court knowing of the testimony only through the bill of exceptions, which at best never, in such cases, contains all and just as given, and not having before them the manner, appearance and deportment of the witnesses, which always have very much to do with the credit and weight due to their words. In such cases, appellant courts do not interfere, and the refusal of this court to interfere in such cases are too numerous and recent to require specific references.

BIRCH, J., delivered the opinion of the court.

Chamberlin owed Beach & Eddy, about two thousand dollars. Little about seven hundred dollars, and various other wholesale merchants in St. Louis and the east, other sums—amounting in the whole, to four or five thousand dollars—for goods he had purchased to supply a retail store, which he kept in the city. The last goods he purchased of the defendants in error, (plaintiffs below) appears to have been on the 12th of March, 1849, and on the 13th of April following, having then in his store about $2700 worth, at cost prices, he sold the whole to Little, for sixty cents on the dollars worth, covering thereby, the debt he owed him, his rent and gass bills, and leaving a balance due of about $800, for which he took from Little two negotiable notes, made him a bill of sale, and surrendered to him the possession of the store, &c. Little entered into an arrangement with the former clerk of Chamberlin, to carry on the store, and he was doing so, accordingly, when, after an ineffectual proposition which was made by the plaintiffs below, that they would take the goods at "cost," and pay Little's debt, they commenced the present suit against Chamberlin, attached the goods and also garnisheed Little. The ownership of the goods was put in issue

11

by the interplea of Little, and Chamberlin having filed the usual statutory plea putting in issue the truth of the allegation in the affidavit, "that he had fraudulently disposed of his property and effects, so as to hinder and delay his creditors," it was agreed that the same jury should pass upon both issues.

It is deemed unnecessary to further set forth the testimony, it being of a character so seemingly uncertain and contradictory that we can well suppose the jury, who had the issue and the parties before them, to have been justified in finding the issue as they did　The whole question, therefore, in this court, must turn upon the propriety and sufficiency of the instructions which were given by the court below.　The only one given for the defendant, Chamberlin, was in these words:

"A debtor may prefer one creditor to another, and transfer all his property to one, and leave the others wholly unpaid, and such transfer is not fraudulent because of such preference.

"The instructions which follow were intended to apply to both branches of the case—the plea of Chamberlin and the inteplea of Little: They were, for the plaintiffs that—

"If the jury believe from the evidence, that at the time of suing out the attachment in this case, the defendant Chamberlin had disposed of his effects, or any part thereof, for the purpose of keeping them, or any part thereof within his own control, whereby his creditors would be prevented from reaching the same under executions, or be put to unusual trouble and delay in getting at them, so as to subject them by legal process to the payment of their demands; or for the purpose of better enabling him to bring about compromises with his creditors, or for preserving the same to his own use, the jury ought to find for the plaintiffs as to Chamberlin; and if they do so find for the plaintiffs on the first issue, and if they also from the evidence believe that Little was privy to any of the aforesaid purposes of Chamberlin, then they also should find for the plaintiffs as against Little on the second issue."

For the interpleader, the court gave the following:

"If the interpleader, Little, purchased the goods in controversy from Chamberlin, in good faith and for a valuable consideration, he acquired a valid title to said goods; nor will the validity of such sale be affected or impaired; even though the jury shall believe from the evidence that Chamberlin, in making said sale, intended to defraud, hinder or delay his creditors, unless the jury shall believe from the evidence, that Little was privy to such fraudulent design."

"Little's right to the goods, acquired under his purchase from Chamberlin, cannot be impeached for any fraudlent intention on the part of

Chamberlin in making said sale, unless Little had knowledge of, or was privy to, such fraudulent design."

"Although Chamberlin may have intended to defraud his creditors, yet it does not affect the sale to Little, unless Little, knowing such intention on the part of Chamberlin, meant by such purpose to aid and assist Chamberlin in so defrauding his creditors, and not merely to secure his own debt honestly.

"A debtor may prefer one creditor to another, and may transfer all his property to one, and leave the others wholly unpaid, and such transfer is not fraudulent because of such preference.

"A conveyance of property will be deemed bona fide and honest, unless fraud is proved."

And the court gave, of its motion, the following:

"It is the province of the jury to determine from the evidence, whether Little had knowledge of a fraudulent design on the part of Chamberlin, in selling the stock of goods to him (Little,) and if they so believe from the evidence, they are bound to find for the plaintiff on the interplea, provided they are satisfied from the evidence that Chamberlin did convey said goods with a fraudulent design."

After the jury had retired to consider of their verdict, the court, in reply to a question they propounded in writing, instructed them (the counsel consenting) that "so far as the rights of Little are concerned, whether Chamberlin intended to commit a fraud upon his other creditors or not, they are not affected, unless a knowledge of such fraudulent intention was brought home to Little."

Premising that this court will not interfere with a verdict and judgment which has been rendered upon such instructions as sufficiently embody and present the law, merely because of the courts declension to give additional instructions, (however proper in themselves,) it may be remarked in reference to the first instruction which was given at the plaintiff's instance, that whilst it was in the discretion of the court to decline to do more than give the substance of it, in the very words of the law, the exposition of the causes which might be held "to hinder or delay" creditors, was at the worst but a commendable redundancy.

The whole sum of the instructions, therefore, which are even liberal when applied to the case of the interpleader, is, that unless he was cognizant of, and privy to the fraud which the defendant Chamberlin, thereby intended to perpetrate upon his other creditors, the sale was a valid one, and placed the goods beyond the reach of the attachment. If otherwise, however, he could not be, as he should not be, upheld in

Little (interpleader) vs. Eddy & Beach.

a purchase, even to secure himself, the further object and effect of which was also to hinder and delay other creditors, in respect to the excess of property thereby transferred. This being sound and tangible morality, can scarce fall below the grade of sound law.

Every man has a right to take care of his own interests, if in doing so he does not impair or injure the rights or interests of others—so that even in this case, (it may not be improper to remark, that) had Little not purchased goods enough to cover his own debt, or, having purchased the whole stock, had he paid for it a fair price, or arranged the payment in such manner, with a man whom he knew to be thereby attempting to transfer all his property beyond the reach of his creditors, and by means of negotiable notes, to defeat (as it would seem) their garnishee, there would have been wanting at least some of the very significant circumstances which doubtless influenced the jury in their several findings.

We cannot see how the interpleader can complain, that the question of his privity in the fraud charged by the plaintiff was not fairly and fully, and even indulgently presented to the jury. The instructions given by the court itself—the one, especially, which was given in response to an enquiry from the jury after they had retired—assumes expressly and broadly, that unless the fraudulent intention of Chamberlin, as defined in the previous instructions given for the plaintiffs, was "*brought home to Little*," HIS rights, as the purchaser of the goods, would be wholly unaffected. The jury, therefore, must have found from the evidence, intelligently and understandingly, that Little had "knowledge of the fraudulent design," which they had previously found against Chamberlin.

The objection that this instruction was given by the court, at the instance of the jury after they had retired, was not only *made* at the proper time, and would for that reason be unavailable here, but its alleged effect (if any) of withdrawing the minds of the jury from the previous instructions they had been considering, could not have been otherwise than favorable to the interpleader, for which additional reason he cannot be heard now to complain.

Deeming, therefore, from an inspection of the whole record, that the case was well enough tried in the court below, the judgment there rendered is in all things affirmed.