Jacobs v. Smith.

JACOBS *et al.* v. SMITH *et al., Appellants.*

1. **Fraudulent Conveyance** : CREDITORS : BONA FIDE PURCHASER. A fraudulent conveyance is valid between the parties thereto, and, as a general rule, is voidable only as to creditors, who, by timely and proper proceedings, by suit or otherwise, acquire some specific lien on the property conveyed prior to a *bona fide* purchase thereof by a third party, for value and without notice.

2. ———— : LIABILITY OF BONA FIDE PURCHASER. While the property itself, in the hands of a *bona fide* purchaser, *pendente lite*, is liable to such creditor, in proper proceedings, with statutory notice of *lis pendens*, yet such purchaser is not otherwise personally liable therefor, or for its rents and profits.

3. **Fraudulent Grantee, Liability of.** It is, however, otherwise with a fraudulent grantee or a purchaser from him without value or with notice of the fraud. Such a grantee or purchaser not only holds the property in trust for such creditors, but is also personally responsible to them for its proceeds or rents.

4. **Equitable Suit** : PETITION : LIS PENDENS. The object and purpose of the doctrine of *lis pendens* and the statutory notice of the same is to secure and hold the property in litigation for the benefit of the plaintiffs in the equitable suit and against any sale or incumbrance pending litigation by defendant, to their prejudice, and in order to have that effect, the petition in said suit should be definite as to the parties to the action, the property to be charged and the nature and the amounts of the claims to be secured.

5. ———— : ———— : NEW PARTIES. Other creditors may, in the discretion of the court, be properly incorporated as new parties plaintiff in a pending suit, but this must be done subject to the prior rights of *bona fide* purchasers for value, as well as to those of the original plaintiffs.

*Appeal from Barton Circuit Court.*—HON. CHAS. G. BURTON, Judge.

REVERSED.

*Robinson & Harkless* for appellants.

(1) The evidence fails to show that the transaction

between Catharine and William Sharp was fraudulent. *Vide Rumbolds v. Parr*, 51 Mo. 592. (2) The court erred in admitting improper evidence over defendants' objections. (3) There was no evidence tending to show that the sixteen hundred dollar note ever went into the Webb City property. (4) Shapley is not bound by the *lis pendens* at all, and even though the court should find against defendant, Shapley, as to part, yet the court should not have charged the property with any more or greater debt than was claimed by the petition at the time of the filing of the *lis pendens*, that is to say, with the Cherry and Davis claim. On this point there is no conflict as to facts. It was conceded that at the time Shapley purchased under the foreclosure, that Cherry and Davis were not parties to this suit, and that they were not mentioned in the *lis pendens*. Hence the only question raised is, can plaintiffs come in and amend a petition, adding new parties, and increasing the amount claimed more than double, and enforce it against Shapley, who had purchased long prior. The enforcement of the rule in *lis pendens* does not proceed upon the ground that the purchaser has been guilty of fraud. Wade on Notice, sec. 350 ; *Mead v. Lord Orrery*, 3 Atk. 235. The section of the statute (R. S., sec. 3217), providing for a *lis pendens* was never intended to apply to an incumbrance taken to secure a debt previously contracted in good faith, and if this be so then Johnson had the right to foreclose and Shapley or any one else had the right to purchase. Wade on Notice, sec. 360. Mr. Johnson took the mortgage before the service of process and hence was not affected by the *lis pendens*. *Herrington v. Herrington*, 27 Mo. 560. (5) Shapley was only bound by what appeared from the pleadings at the date of his foreclosure mortgage. This proceeding is one to charge the land with certain and specified debts and the petition points out what they are and with these only is Shapley chargeable if at all. *Ray v. Roe*, 2 Blackf.

258 ; 3 Atk. 392 ; *Schmidt v. Smith,* 106 U. S ; 97 Pa.
St. 153 ; 4 Minn. 461 ; *Stone v. Connelly,* 1 Met. [Ky.]
654 ; *Jones v. Lusk,* 2 Met. [Ky.] 338.   A rule that
a purchaser, because he has notice of one or two debts,
by *lis pendens,* must thereby be at the mercy of every-
body is manifestly unjust.   *Terrel v. Andrew Co.,* 44
Mo. 309 ; *Hopkins v. Garrard,* 7 B. Monroe, 312.
(6)   The judgment is clearly wrong in making Shapley
account for past rents and profits.   *Newham v. Kenton,*
79 Mo. 382 ; Wade on Notice, sec. 375 ; *Fithian v.
Monks,* 43 Mo. 502 ; *Gamble v. Johnson,* 9 Mo. 597.

*Harding & Buler* for respondent.

(1)   The deeds made by Sharp to his daughter, Oc-
tober 20, 1874, conveying southwest section 13, and all
of section 14, township 30, range 29, were voluntary,
and, therefore, fraudulent as to these plaintiffs, all of
whom,   except Simpson (Vanosdell's intestate), were
creditors at that time.   A voluntary conveyance is
fraudulent *per se* as to existing creditors.   *Potter v. Mc-
Dowell,* 31 Mo. 62 ; *Patton v. Casey,* 57 Mo. 118.  (2) The
Gibson note for sixteen hundred dollars was a gift, as
shown by the testimony of Gibson, who says he bought
the land of Sharp, and that he (Sharp) had the note
made payable to his daughter, claiming that he was
giving it to her, as he had already given all his other chil-
dren as much as he wanted them to have.   It was,
therefore, likewise fraudulent as to all of these plaintiffs,
who were then existing creditors.   Such declarations are
competent evidence.   Bump on Fraud. Conv., 543 ;
*Potter v. McDowell,* 31 Mo. 62 ; *Gamble v. Johnson,* 9
Mo. 605.   And such a transaction is fraudulent *per se.*
*Reppy v. Reppy,* 46 Mo. 570.   (3) The mere production
by defendants of their receipt and contract was not
sufficient to prove that there was any valuable consid-
eration.   It is as easy to manufacture a bogus note or

receipt, or a sham contract, as a fraudulent deed, and such documents, by themselves, prove nothing. Bump on Fraud. Conv., 95. (4) Catherine being a mere voluntary and fraudulent grantee, held as trustee for her father's creditors, and when she exchanged it for other property, such other property stands in its stead, subject to the same liability. *Sloan v. Torry*, 73 Mo. 623 ; *Howe v. Waysman*, 12 Mo. 169 ; *Rutherford v. Williams*, 42 Mo. 19 and 34 ; 2 Story Eq. Juris., secs. 1232, 1258, 1265. (5) The evidence of Gibson shows where she got the sixteen hundred dollar note. The deed shows where she got the Dade county land, and the evidence of Dermott, who was one of the parties to the trade, shows that the Webb City property was exchanged for that note and land. There is no dispute as to these points. If any of the testimony of Gibson or Dermott was hearsay it was as to a point not controverted, and that was established by abundance of other evidence and was, therefore, immaterial and no ground for reversal. *Nelson v. Fisher*, 66 Mo. 381 and 4 ; *Gavisk v. Railroad*, 49 Mo. 274. (6) Moreover the objections were general to the whole deposition, and not specific, and were properly overruled for that reason if no other. If any parts of the depositions were objectionable on the ground of hearsay, the particular parts ought to have been pointed out and the court requested to pass upon them. *Webster v. Cameron*, 40 Mo. 156 ; *Gwin v. Gamanche*, 25 Mo. 42 ; *Wurlock v. Peterson*, 58 Mo. 408. (7) There was no error in the decree in favor of Cherry and Davis, as against Shapley ; he was a purchaser *pendente lite*, and took subject to any decree that might be made in the cause. *Turner v. Babb*, 60 Mo. 342, and cas. cit. ; *Real Estate Savings Institution v. Collonias*, 63 Mo. 295 ; *O'Reilly v. Nicholson*, 45 Mo. 150. (8) Besides, being a purchaser *pendente lite*, he was a purchaser with notice of the alleged fraud. The notice of *lis pendens* was of record, and in the chain of title, and all subsequent purchasers are

bound to know of it and its contents. *Digman v. McCollum*, 47 Mo. 372. The notice said that the suit was to subject the lots to the payment of the debts of Wm. Sharp, deceased. That certainly was sufficient to put Shapley on inquiry and make him a purchaser with notice of the fraud. He would clearly have been subject to a new suit by Cherry and Davis, and if so, why not to the decree in this case? *Bobb v. Woodward*, 50 Mo. 100, and cases cited; *Sloan v. Torry*, 73 Mo. 623; *Allen v. Berry*, 50 Mo. 90. (9) The decree against Shapley, requiring him to account for and pay over the rents and profits, may have, and probably did astonish both him and his counsel, as they say. Nevertheless, it is strictly in accordance with law, and the practice in such cases as well as consonant with the abstract principles of justice. See Bump on Fraud Conv., pp. 569 and 570, and cas. cit. (10) This case is covered with badges of fraud. Bump on Fraud. Convey., 78, 79, 80, 81, 82, 86, 90, 92, 94, 95, 96.

RAY, J.—This was a suit in the nature of a creditor's bill commenced in the circuit court of Jasper county on October 23, 1877, by the plaintiffs, Jacobs, Gibbs, Barker, Burkhart, and Simpson's administrator against Catherine Smith, her husband, and the legal representative of one William Sharp, deceased, to subject lots ten and nineteen in Webb's first addition to Webb City, in said county, in the hands of said Catherine, to the payment of the claims of said plaintiffs as creditors of said Sharp, deceased, on the ground that the property exchanged by said Catherine for said lots had been fraudulently conveyed by said Sharp to said Catherine, his daughter, while insolvent, with intent to cheat and defraud his creditors. On the same day said plaintiffs also filed for record with the recorder of deeds for said county, the statutory notice of the pendency of said suit, as required by section 3217, Revised Statutes of 1879, p. 542. Afterwards, on January 17, 1878, said

Catherine and her husband gave a mortgage with power of sale on said lot nineteen, to one Johnson, to secure a note for $79.50, due in thirty days; and at a sale thereof under said mortgage, on May 27 thereafter, one Shapley purchased said lot nineteen, and received a deed therefor, reciting a consideration of one hundred dollars.

After this, said suit was regularly transferred to the circuit court of Barton county, and, thereafter, at the April term, 1881, of said court, the firm of "Cherry & Davis," also creditors of said Sharp, in a separate and distinct claim, caused themselves to be added as parties plaintiffs to said pending suit; and at the same time said plaintiffs also caused said Shapley to be made a party defendant; and the said Catherine having died insolvent her legal representatives were also brought in as parties defendant, and thereupon an amended petition was filed accordingly. Subsequently, at the April term, 1882, another amended petition was filed, upon which the case was finally tried.

This petition, in its general scope and object, was similar to the original petition, except as before stated, that it incorporated said Cherry & Davis as a new party plaintiff with a separate and distinct claim (nearly three times as large as the aggregate amount of all five of the original plaintiffs), to said pending suit; and also made said Shapley, and the legal representatives of said Catherine, deceased, new parties defendant; and then proceeds to charge, in substance, that Shapley's said purchase of said lot nineteen, with the hotel property thereon, was made in May, 1878, long after the commencement of the suit, and with full notice thereof, and the facts aforesaid; and was only a pretended purchase, for a merely nominal consideration of one hundred dollars, none of which was really paid; and was under a sham mortgage to a fictitious grantee, and merely for the purpose of clouding and incumbering the record title to said property for the benefit of said Smith, and

that immediately thereafter said Shapley took possession thereof and commenced and continued to collect the rents and profits at from twenty-five dollars to thirty dollars per month. The petition also further charges that said lot nineteen, with its rents and profits, in the hands of said Shapley, now represent in part the said property so fraudulently conveyed by said Sharp, deceased, to defraud his creditors, and as such properly chargeable with payment of said debts. The petition then concludes with the prayer that said Webb City property may, by decree of court, be adjudged "trust property" in the hands of defendants, and that the same may be sold to satisfy the claims of plaintiffs; and that an account may be taken of the rents and profits of the premises that have been collected and received by said Shapley, and that he may be adjudged to account for and pay over the same to plaintiffs, and for all other proper relief.

To this petition defendants, Shapley included, filed an answer of general denial; and also an abortive attempt to set up and claim, for said William Sharp, a homestead in the real estate so fraudulently conveyed and so sought to be subjected to the payment of said debts. The cause was submitted to the court upon the pleadings and the evidence; whereupon the court, after considering the same, made a special finding and decree, the material parts of which are to the effect following: Among other things the court found that the original plaintiffs, on the twenty-third of October, 1877, commenced the suit, and filed with the recorder of deeds the statutory notice thereof; that in January thereafter, the defendant, Catherine Smith and husband, gave one Johnson a 'mortgage with power of sale on said lot nineteen, in said Webb City, to secure a note for $79.50, due in thirty days; and that in May following, at a sale thereof thereunder, said Shapley purchased the same; that subsequently, in April, 1881, said Cherry & Davis,

as creditors of said Sharp, with a separate and distinct claim, caused themselves to be added as a party plaintiff to said pending suit, and at the same time said plaintiffs also caused said Shapley to be made a party defendant.

The court, thereupon, further found that said Shapley was, and is, a purchaser *pendente lite* of said lot nineteen, and ever since his said purchase in May, 1878, had been in possession, collecting and receiving the rents and profits thereof, to the amount of five hundred dollars, and that the monthly rental value thereof was ten dollars. The court also found that said conveyances from said Sharp to his said daughter, Catherine, were voluntary and without valuable consideration, and fraudulent and void as to his creditors; that the said lots ten and nineteen in said Webb City, were "trust property" in the hands of said defendants, and as such chargeable with the payment of said debts and claims; that the original plaintiffs having first commenced proceedings to charge said property with the payment of their debts were entitled to be first paid out of the proceeds thereof. The court thereupon adjudged and decreed that said lots ten and nineteen, or so much thereof as necessary to be sold to pay said debts; and if said sale failed to realize enough to pay the same, then it was further ordered that the sum of five hundred dollars, and the accruing rents of the premises (lot 19), or so much thereof as necessary be recovered, levied and collected of the goods and chattels of the defendant, Shapley, and that execution issue therefor. It was also further ordered that out of the proceeds should be paid, first, the costs of the suit; second, the claims of the original plaintiffs; third, the claim of said Cherry and Davis; and the balance, if any, be paid over to the defendants, or to such of them as showed themselves entitled thereto. The defendant, Shapley, having filed unsuccessful motions for new trial, and in arrest, appealed the cause to this court.

The material and controverted questions arising on this record, under the findings, it will be perceived, are what effect, if any, is to be given to the mortgage, executed by Catherine Smith and husband, to Johnson, and the purchase thereunder by Shapley, pending the suit; (1) as against the original plaintiffs; (2) as against the intervening plaintiffs pending the suit, but after said purchase by Shapley; and (3) whether said Shapley, in any event, under the findings, is personally liable for the rents and profits so collected by him. Before proceeding further, it may be proper to remark that the issues tendered by the amended petition, touching the actual notice of said suit, and the allegations thereof, as well as the want of good faith and valuable consideration in said mortgage, and purchase thereunder, on the part of said Shapley, or said Johnson, are wholly ignored by the court in its said findings; and that the case, as we understand it, is made to turn upon the simple fact, without more, that said Shapley was, and is, a purchaser *pendente lite.* We take it also from the finding that Shapley was, and is to be treated as a purchaser for value, and without actual notice of the imputed fraud.

We may premise also that a fraudulent conveyance is valid between the parties thereto, and as a general rule is only voidable as to creditors, who by timely and proper proceedings, by suit or otherwise, acquire some specific lien on the property conveyed, prior to a *bona fide* purchase thereof by a third party for value, and without notice. Bump on Fraud. Con. [3 Ed.] 533 to 537; *Ibid.* 444, 458, 460, 491, 492.

The general rule, also, as we think, is that while the property itself is liable to such creditors in the hands of such a purchaser "*pendente lite*," he is not otherwise personally liable therefor, or for the rents and profits thereof. Wade on Notice, secs. 375, 337, 338 and 339. It is, however, otherwise with a fraudulent grantee, or a purchaser from him, without value or with notice of the

fraud. Such a grantee or purchaser not only holds the property itself in trust for such creditors, but are also personally responsible to them for the proceeds or the rents and profits thereof, by proper and timely proceedings for that purpose. Bump on Fraud Conv., 608, 610, 612. Tested by these rules we think and so hold that the rulings of the trial court in the case at bar, was and is correct, so far as the original plaintiffs and the property itself are concerned. But so far as the plaintiffs who intervened in the pending suit after Shapley's said purchase; and so far as Shapley's personal liability for the rents and profits are concerned, we are of opinion that the court erred, and so hold.

The object and purpose of the doctrine of *lis pendens* and the statutory notice thereof, in a case like the present, as we understand it, is to secure and hold the property in litigation, for the benefit of the plaintiffs in that suit against any sale or incumbrance thereof by the defendant pending litigation, to their prejudice, and in order to have that effect, and be just to all parties, the petition should be definite, as to the parties to the action, the property to be charged, and the nature and amount of the claims to be secured. Wade on Notice, sec. 353; R. S., 1879, sec. 3217. The rule doubtless would permit the introduction of a new party, as co-plaintiff, who, by reason of his interest in the claim, then pending, was a necessary party litigant thereto; but, certainly does not extend to other creditors, who have separate and distinct claims of their own, so as to pre-judice the rights of a prior intervening purchaser for value and without notice. If Cherry and Davis, instead of having themselves incorporated into the pending suit, had, as they might have done, instituted an original and independent suit of their own as such creditors, there could have been no place or pretense for the doctrine of "*lis pendens*," as Shapley's purchase had been made more than three years prior thereto. While such a cred-

itor, in the discretion of the court, may properly be in-
corporated as a new party plaintiff in a pending suit by
other creditors, still it must be done subject to the prior
rights of *bona fide* purchasers for value, as well as the
original plaintiffs therein, as was actually done in this
case.

If, in this case, it had been shown by the evidence
and so found by the court, as it was expressly charged
in the amended petition, that said mortgage and pur-
chase under which Shapley held was a sham and a pre-
text, or that he was a party to, or had notice of the fraud,
then the judgment would have been correct. But such,
for some reason, was not the finding of the court. When
the case goes back for new trial, as it must, the court
can be asked, upon proper testimony, to pass directly
upon these issues so clearly presented in the pleadings,
and find and judge accordingly.

It may be well to add that the above rulings in the
case at bar in no manner impair or conflict with the
ruling in the case of *Turner v. Babb*, 60 Mo. 342, to
which our attention has been called; or the subsequent
case of *McIlrath v. Hollander*, 73 Mo. 105, which fol-
lowed it, or the more recent case, not reported, of
*McIlrath v. Frederick*, where the same doctrine is rec-
ognized. The case at bar is clearly distinguishable from
those cases. In those cases the judgment, whose valid-
ity and regularity was called in question in a subsequent
suit between other parties, was one of compromise
of the original cause of action and between the original
parties, by the terms of which the prevailing party got a
judgment coupled with a charge upon the real estate in
controversy. That charge, not being paid by the party
whose duty it was to discharge it, the property in ques-
tion was afterwards sold in compliance with said com-
promise judgment, and a third party became the pur-
chaser, and the contest arose in another suit between
this purchaser at execution sale and the purchaser *pen-*

Jacobs v. Smith.

*dente lite* in the original compromise suit, to which he was not made a party as in the case at bar. No appeal or writ of error was taken from the compromise judg-ment under which the execution purchaser claimed, and it remained unreversed and in full force. And it was held in the above cases that in such a contest between such parties that the purchaser *pendente lite* of property actually in litigation, though for a valuable considera-tion and without notice express or implied, in point of fact, was bound by the decree affecting said property which might be rendered against the person from whom he derives title, though that decree was one of compro-mise between the parties, and other and different from that contemplated by the pleadings.

To that doctrine, as applied to the facts of those cases, we still adhere, as announcing the correct rule. In the case at bar the trial court, under very different circumstances, went much farther in that direction than this court has ever gone. Here the judgment complained of is the judgment in this suit between these parties, and not in another and collateral proceeding between third parties. Here no rights of third parties predicated upon this, or any collateral judgment have intervened to complicate and embarrass the inquiry ; but the con-test now before us is exclusively between these plaintiffs and one of the defendants, who has appealed directly from said judgment to correct whatever material error there may be therein to his prejudice. In such a case, upon appeal to the Supreme Court, any material error to the prejudice of the appellant, rendering the judgment erroneous or void, manifestly may be reversed upon the real merits of the case, as between such parties.

For the reasons above stated we are of opinion that the trial court erred, as hereinbefore stated, and its judg-ment herein is accordingly reversed and the cause re-manded for further proceedings as herein directed. All concur, except Henry, C. J., not sitting.