EUNICE BRISTOW et al., Appellants, v. THACK-STON et al.

Division One, March 15, 1905.

1. **FRAUD: Release of Deed of Trust: Knowledge.** A purchaser of lands after a deed of trust thereon has been released, without actual knowldge that it had been released through fraud, or knowledge of any fact in reference thereto which would have put him on inquiry, is not chargeable with such fraud, and if such release is subsequently set aside without his being joined as a party, he is not affected thereby.

2. **LIS PENDENS: Purchaser: Dismissal.** The title of a *lis pendens* purchaser is not affected unless the suit is brought to a successful termination against the vendor. If dismissed or abandoned by the adverse party, the rights of the purchaser remain as if the suit had never been brought or the *lis pendens* notice had never been filed.

3. ————: ————: ————: **Garnishment.** Plaintiff had been decreed divorce from her husband and judgment for $500 alimony against him, and afterwards without any authority from him caused to be recorded a deed of trust executed two years previously by her mother-in-law to secure a note for $2,000 given to her husband, and summoned the mother-in-law as garnishee, and thereafter he executed and caused to be recorded a deed of release of the deed of trust, whereupon plaintiff during the pendency of that suit filed a *lis pendens*, and thereafter defendant bought the lands from the mother-in-law, and asked to be made a party defendant to the garnishment. Thereupon the mother-in-law withdrew her answer as garnishee and plaintiff dismissed that portion of her reply to the garnishee's answer which referred to the deed of trust and which asked that the property be charged with the lien of the deed of trust, and tried the case on the portion which related to the note and secured a general judgment against the mother-in-law. After-

wards plaintiff caused her husband's interest in the land to be sold under execution and bought the same, and then instituted a suit against him and his mother alone to have the release set aside, and that was done, and the deed of trust was ordered foreclosed and the property was sold to her, and she brought this ejectment suit. *Held*, that when plaintiff voluntarily dismissed all portions of her reply to the garnishee's answer which related to the land and went to trial solely upon the question of whether or not the mother-in-law owed her son the $2;000 note, she destroyed the effect of the *lis pendens*, for the judgment rendered against the mother-in-law in that suit was a mere personal judgment, and could have no more effect upon the property in suit than upon any other land owned by her, and hence the title acquired by the purchaser from the mother-in-law after the release of the deed of trust and before the subsequent suit to set the release aside was instituted, was in no wise affected by the *lis pendens* filed during the pendency of the garnishment suit.

Appeal from Randolph Circuit Court.—*Hon. John A. Hockaday,* Judge.

AFFIRMED.

*B. S. Head* for appellants.

(1) Plaintiffs obtained their title to the real estate in controversy from Josephine Hurt through the liens of a judgment and of a deed of trust and garnishment proceedings. While said liens were in force and of public record and said garnishment proceedings were pending, the defendants purchased the property from said Josephine who delivered them possession. In answer to plaintiffs' petition in this suit, defendants attempt to plead that they are innocent purchasers without notice. This being an affirmative defense, the burden is on them to properly plead and prove it. Their plea in that behalf is too general and indefinite. They should have denied fully and in the most precise terms every circumstance from which notice could be inferred. Halsa v. Halsa, 8 Mo. 303; Wallace v. Wilson, 30 Mo. 335; Holdsworth v. Shannon, 113 Mo. 508; Ins.

Co. v. Smith, 117 Mo. 292; Young v. Schoolfield, 132 Mo. 650; Bierman v. Crecelius, 135 Mo. 386. (2) Hamilton, having purchased the land from Josephine Hurt while the garnishment was pending against her, stands in her shoes and necessarily shares the same fate. 21 Am. & Eng. Ency. Law (2 Ed.), 595; Bailey v. Winn, 113 Mo. 155; Dodd v. Lee, 57 Mo. App. 167; Hall v. Morgan, 79 Mo. 50; O'Riley v. Nicholson, 45 Mo. 160; Turner v. Babb, 60 Mo. 342; Real Estate Savings Inst. v. Collonious, 63 Mo. 290; Holloway v. Holloway, 103 Mo. 274; Mason v. Black, 87 Mo. 329. (3) When there is actual or constructive notice of pendency, the judgment or decree binds the property in the hands of the *pendente lite* purchaser and affixes him with knowledge, not only of the issues directly involved in the litigation, but also of those as to which, though merely collateral thereto, the record puts him upon inquiry. Hamilton had both actual and constructive notice of the pendency of the garnishment against Josephine Hurt and the record of that proceeding shows that she was garnished for a debt secured by deed of trust on the property she proposed to sell him; and he should have known that a judgment against the garnishee for that debt would carry with it all liens collateral to secure it. 21 Am. and Eng. Ency. Law (2 Ed.), 598; McIlwrath v. Hollander, 73 Mo. 105; Dodd v. Lee, 57 Mo. App. 167; Patterson v. Booth, 103 Mo. 402; Burnham, Munger & Co. v. Smith, 82 Mo. App. 35. (4) The Hamiltons base their title on a general warranty deed from Mrs. Hurt which is executed to them, as appears on its face, "subject to judgments, liens and taxes of record, which are a lien against said property." Such a recital in the deed, tendered to them as a muniment of title, necessarily put them upon inquiry as to what liens and judgments were against the land at the time of their purchase. Mason v. Black, 87 Mo. 341. (5) The result of that garnishment proceeding was a judgment against Mrs. Hurt which operated as a legal transfer to the execu-

tion plaintiff of the deed of trust given on the land by said garnishee to secure the garnished debt. The rights and credits in the hands of the garnishee were not encumbered with any trust, as Walter Hurt, the *cestui que trust* in the deed of trust, held the whole beneficial interest while the trustee had the mere formal legal title. 14 Am. and Eng. Ency. Law (2 Ed.), 745; Lackland v. Geresche, 56 Mo. 267; Sheedy v. Bank, 62 Mo. 17; Sloan v. Campbell, 71 Mo. 387. (6) The defendants Hamilton were in privity of estate with the defendants Walter and Josephine Hurt in the judgment and decree rendered against the latter and in favor of the plaintiffs in this suit on September 14, 1901. In that suit the validity of the deed of trust, the basis of plaintiffs' title, and the validity of Walter Hurt's release deed, the basis of defendants' title, were directly in issue. The deed of trust was sustained and the release deed set aside. As to these two documents, the matter is *res adjudicata,* and the defendants Hamilton can not in this suit go behind the decree in that suit for the purpose of showing a state of facts which might have been set up as a defense to the action in which said decree was rendered. 24 Am. and Eng. Ency. Law (2 Ed.), 765; State ex rel. v. St. Louis, 145 Mo. 551; Donnell v. Wright, 147 Mo. 639; Johnson v. Realty Co., 167 Mo. 325; Bierman v. Crecelius, 135 Mo. 386. (7) A verdict or finding of a court can not be allowed to stand unless there is some substantial evidence to support it. There is no evidence to support the judgment in this case. Flynn v. Wacker, 151 Mo. 545; Whitmore v. Crawford, 106 Mo. 435; James v. Life Assn., 148 Mo. 1; Kohn v. Kansas City, 108 Mo. 387.

*Willard P. Cave, J. H. Lamotte* and *John H. Hamilton* for respondents.

(1) The statute fixes the commencement, extent and duration of the lien of a general judgment; it

begins on the day of the rendition thereof. R. S. 1899, sec. 3714. (2) Notice *lis pendens* has no application where a general judgment is rendered; *lis pendens* is designed to hold certain specific property which must be referred to in the judgment or decree; a mere 'money judgment is based on an action *in personam;* there is no *res litigiosa* in actions *in personam.* "This is equally the case whether the cause of action is one arising *ex contractu* or *ex delicto;* the reason is obvious; were the rule otherwise, it would be in the power of an unjust claimant to greatly embarrass and finally destroy the business of a defendant; it would tend to a prohibition in dealing with defendants." 13 Am. and Eng. Ency. Law (1 Ed.), 879; Gardner v. Peckham, 13 R. I. 102; Sanders v. McDonald, 63 Md. 503; Davey's Appeal, 97 Pa. St. 153; 2 Black on Judgments (2 Ed.), sec. 550. (3) Appellants contend that they purchased the equitable interest of Walter Hurt by a sale under execution against Walter Hurt, the levy being made upon January 11, 1897, and sale March 12, 1897; the levy was made long after the date of the release of the deed of trust held by Hurt against the property, and long after the conveyance to respondents, and appellants acquired no interest under said sale. But conceding, for the sake of argument, that appellants by said sale did acquire an equitable interest in the property, an equitable title would not sustain ejectment. Clay v. Mayr, 144 Mo. 376; Kingman v. Sievers, 143 Mo. 519; Robinson v. Claggett, 149 Mo. 153.

MARSHALL, J.—This is an action in ejectment to recover an undivided half interest in lots 22, 23 and 24, being the east forty feet of said lots, in block 19, of the original town of Moberly, in Randolph county.

The petition is in the usual form, and lays the ouster as of March 18, 1902. The answer of the defendants Thackston and Epping is a general denial, with a special plea that they are the tenants in pos-

session, of John N. and S. C. Hamilton, who claim to be and whom they believe to be the owners of the land. On their own motion said John N. and S. C. Hamilton were made parties defendant, and filed an answer, which denies that the plaintiffs are entitled to the land sued for, and then pleads specially that the defendants purchased the land on May 15, 1895, from Josephine Hurt, bona fide, for a valuable consideration, and without notice of the claim of the plaintiffs; that said Josephine Hurt was the then owner of the premises in fee, and conveyed the same to them by a general warranty deed, and that they took the peaceable and undisputed possession of the premises on said date and have had the continuous possession thereof ever since. The case is here upon a certificate of the judgment, and the abstract of the record sets out that the remainder of the Hamiltons' answer is omitted, because "it consists entirely of a second count in equity asking for an order restraining plaintiffs from bringing further suits respecting the property in controversy, was dismissed by the court below, and pertains to no question presented for decision here."

The reply is a general denial.

The plaintiffs say that the court and parties treated the case in the trial court below as a case in equity. It was tried by the court, without the aid of a jury, no instructions were asked or given and the court entered a judgment upon "the issues in the action at law in ejectment for defendants and doth dismiss the second count in the answer of defendants, John N. and S. C. Hamilton, asking for equitable relief."

After proper steps the plaintiffs appealed.

The case made is this:

J. W. Hurt died intestate, at a date not shown in the abstract of the record, seized of the following property: the east forty feet of lots 22, 23 and 24 in the town of Moberly (the land here involved), lots 1, 2, 3, 5, and

6 of H. M. Porter's addition, and some personal property, not specified in the abstract of the record. He left a widow, Josephine Hurt, a son, Walter Hurt, born of his marriage with said Josephine, and two children, Edward Hurt and Elizabeth Tillottson, born of his prior marriage. On May 24, 1892, the widow, Josephine, duly elected to take a child's share in lieu of dower.

A short while after his death the widow and children made a voluntary partition of the property, whereby, the son by the first marriage, Edward Hurt, got one-half of the land here involved, and the widow Josephine got the other hàlf. The daughter by the first marriage, Elizabeth Tillottson, got "some notes and a small piece of property on the east side, a dwelling house." And Walter Hurt, the son by the second marriage, "got some little thing . . . but not much."

On June 1, 1902, Walter Hurt and his then wife Eunice, the plaintiff herein, executed and delivered a quitclaim deed to his mother, Josephine, for the land here involved, and it was duly placed on record. A day or two afterwards Walter became dissatisfied, and employed an attorney to bring suit. There is a conflict in the evidence as to whether it was to be a suit to set aside the voluntary partition of his father's estate, or whether it was to be a suit to set aside the quitclaim deed to his mother. The plaintiffs claim it was to be the latter. There is also a conflict in the evidence as to the consideration for the quitclaim deed from Walter and wife to Josephine. The then wife, now the plaintiff herein, says she did not know she was signing a deed, but that she understood it was simply a paper to enable Josephine to borrow money to buy the interest of Edward Hurt and Elizabeth Tillottson, in this land. But as she could not read, and as she says she had the toothache at the time the deed was made, she could not understand exactly what the arrangement was. So that there is no substantial testi-

mony in the case to overcome the recital in the deed that the consideration was one hundred and seventy-five dollars. Nor is this feature of the case material or pertinent here, because all the parties in this case derive title partly under the said quitclaim deed of Walter and wife to Josephine.

At any rate, on June 4, 1892, Josephine caused a scrivner to prepare and she executed a note for two thousand dollars payable to Walter Hurt, and secured it by a deed of trust upon her undivided interest in the land involved in this suit, both of which she turned over to Walter. He was present when the note and deed of trust were executed, and she then declared that she did not owe Walter anything, but that in the partition of the estate, his half brother had gotten a half interest in this land and her boy had gotten nothing, and she was afraid that after her death Edward would beat Walter out of the half interest in this land which she had gotten, and that she wanted the note and deed of trust aforesaid to be "a testamentary disposition to him," and that the deed of trust was not to be put on record until after her death. Walter took the note and deed of trust, and placed it in his wife's (the plaintiff's) hands for safekeeping, and it so remained until she caused it to be placed on record as hereinafter stated.

Sometime thereafter, Walter's wife, Eunice, brought suit against him for divorce, and on February 12, 1894, she obtained a decree of divorce from him, and upon exhibiting the note and deed of trust to the court as proof of Walter's ability to pay alimony, the court allowed her five hundred dollars alimony. Said Eunice thereupon caused the deed of trust aforesaid for $2,000, which Walter had entrusted to her for safekeeping, to be placed on record.

On April 16, 1894, a general execution was issued against Walter to collect the judgment for alimony.

On July 13, 1894, Josephine was summoned as garnishee and the execution returned *nulla bona* otherwise.

On September 17, 1894, Walter executed a deed of release of said deed of trust to Josephine. This deed of release was dated June 7, 1894, but was acknowledged on September 17th, and recorded on September 19, 1894.

Sometime in September, 1894, Josephine filed an answer as garnishee, denying that she owed Walter anything, and the plaintiff filed a reply thereto.

On February 6, 1895, the plaintiff filed an amended reply to Josephine's answer as garnishee. This reply set up, first, that Josephine was indebted to Walter in the sum of $2,000, evidenced by the note of June 4, 1892, aforesaid; second, that on the same date, Josephine executed a deed of trust upon the real estate here involved to secure said note, and that it was a subsisting lien thereon for the payment of said note. The reply further set out the judgment for five hundred dollars alimony aforesaid, the summoning of Josephine as garnishee and the return of the execution *nulla bona* otherwise. The plaintiff then asked judgment for five hundred dollars, with interest and costs, and that it be declared a lien on said real estate and that the land be sold to satisfy the same.

On February 8, 1895, Eunice filed in the recorder's office a *lis pendens,* stating that there was pending in the circuit court of Randolph county, at Moberly, a suit wherein she was the plaintiff and Walter was the defendant, and Josephine was the garnishee, and which was returnable to the September term, 1894, of said court, and that the real estate liable to be affected by said suit was the land here in controversy.

On May 15, 1895, Josephine sold the property to the defendants John N. and S. C. Hamilton for fifteen hundred dollars cash and other property, aggregating twenty-five hundred dollars. The deed recited that it was subject to a deed of trust for $1,000, and also judg-

ment liens and taxes of record which are a lien against said property. But they were paid and deducted from the purchase price.

On September 18, 1896, the garnishment case came on for trial. Thereupon John N. Hamilton asked to be made a party defendant, but the abstract of the record. is not clear as to whether he was permitted to do so or not; the title of the case set out on page forty of the abstract of the record seems to indicate that he was, for it speaks of him as a party defendant. Thereupon the garnishee withdrew her answer; the plaintiff dismissed "the second count in her petition;" the garnishee made default; the court heard the evidence and rendered a general judgment in favor of Eunice and against Josephine for five hundred and eighty-five dollars and costs. The abstract of the record further sets out the petition "of the plaintiff upon which the case was tried," but it is really a reply to the garnishee's answer, and predicates a right of recovery solely upon the note for two thousand dollars made by Josephine to Walter, on June 4, 1892, and a general judgment is asked against Josephine. The abstract of the record then recites as follows: "The second count in this denial of the garnishee's answer is fully set out in the bill of exceptions, but is omitted here for the reason that plaintiff dismissed it before the trial on account of misjoinder and defect of parties, and it is not material to any issue in this case."

On January 11, 1897, Eunice caused an execution to be issued on the judgment for alimony of February 12, 1894, and had it levied on the interest of Walter in the property here involved, and at the sheriff's sale on March 12, 1897, the plaintiffs herein, Eunice Bristow (formerly Hurt) and B. S. Head, became the purchaser thereof for twenty dollars.

Sometime thereafter—the date is not given—the plaintiffs herein instituted a suit in equity against Walter and Josephine Hurt (the Hamiltons were not made

parties thereto) to set aside the deed of release from Walter to Josephine of the two thousand dollar deed of trust, dated June 4, 1892, and on September 14, 1901, a decree was entered finding that said deed of release was fraudulently executed for the purpose of defeating the judgment of five hundred dollars, alimony, in favor of Eunice and against Walter of February 12, 1894, and setting the same aside and subrogating the plaintiffs herein to Walter's rights under said deed of trust, and ordering that the same be foreclosed, and that a special execution be issued directing the sheriff to sell the land to satisfy said judgment. At such sale on April 17, 1902, the plaintiffs herein became the purchasers of the interest of said Josephine in the land here involved for fifty dollars, and received a sheriff's deed therefor.

Then, on April 19, 1902, the plaintiffs instituted this action in ejectment to recover an undivided half interest in the land.

On September 15, 1902, this suit resulted in a judgment for the defendants on the plaintiffs' cause of action, and the Hamiltons' cross-bill was dismissed.

The abstract of the record further shows that at some time—the date is not given, but from the number of the book containing the records of judgments it would seem to have been after the judgment in the garnishment case—the plaintiffs herein instituted a suit, the nature of which is not shown, against Walter and Josephine, which resulted in a nonsuit of the plaintiffs, but from what appears it is impossible to determine what bearing that case has upon this case.

There is a conflict in the oral evidence as to the value of the land here involved. The plaintiff Head was a witness for plaintiffs, and he said that at the time of the partition *inter partes,* the parties estimated the property to be worth $8,000, and that the share of each of the parties therein was worth $2,000, and that the note and deed of trust for $2,000, given by Joseph-

ine to Walter, was to represent Walter's interest in the property. On the other hand, Dennis Hogan, a witness for the plaintiff, who was in the real estate business, and who drew the note and deed of trust aforesaid, at Josephine's request, said that the property rented for forty dollars a month, when it was rented, but that it was not rented all the time, and the tenants were about three months in arrears for their rent. He also testified that Josephine said she did not owe Walter anything, but that Edward Hurt had cheated Walter out of his share of the estate in the partition *inter partes*, and that she was afraid that after her death he would cheat him out of the undivided half interest therein which had been allotted to her, and that she wanted said note and deed of trust to be "a testamentary disposition to him," and did not want the deed of trust recorded until after her death. He also said that the partition, *inter partes*, was made, and that she did not want Walter to bring suit to have it set aside and to recover his share, because of certain delicate considerations which made it undesirable that the family affairs should be aired in court, and therefore she made the said note and deed of trust to Walter to satisfy him and keep the matters out of court. And J. W. Dorser, another witness for the plaintiffs, who had been in the real estate business for thirty years, and who was Josephine's agent in the sale of the property to the Hamiltons (and not Hamilton's agent as the plaintiffs state it), said the property was worth from $4,000 to $4,500, and that it was not well located. He also said Josephine told him she made the note and deed of trust to Walter "for a consideration to protect her son Walter Hurt in case of her death."

The plaintiffs also claim that the Hamiltons not only had constructive notice of their claim, by virtue of the *lis pendens*, and by being privies in representation with Josephine and Walter, but also that they had actual knowledge thereof, and took with notice, and,

hence, are not innocent purchasers for value and without notice. This contention is partly based upon the argument that Dorser was the agent of the Hamiltons, and that he had actual knowledge of the scheme of Walter and Josephine to defraud the plaintiffs or at any rate had such knowledge as put him upon inquiry, and, therefore, his knowledge is imputable to the Hamiltons.

There is no evidence in the abstract to support this contention. For Dorser was a witness for the plaintiffs and he expressly said, "I was the agent for Mrs. Hurt in negotiating that trade" (the trade with the Hamiltons), and there was no countervailing testimony in the case. But on the contrary, Hamilton testified that "Mr. Dorser negotiated the trade for Mrs. Hurt, and he made the trade with us." And he further said he conducted the trade on his own behalf and for his wife S. C. Hamilton, and that he knew nothing about any of the matters herein referred to, except the *lis pendens,* until a few days after he had bought the property, when he heard something about it, and he asked Dorser about it and he told him what Mrs. Hurt had told him, and he went to see her and she said that the mortgage didn't cut any figure, "that it was only given to prevent Ed Hurt from getting all the property from Walter Hurt, her son, some way or other, I don't know exactly the term she used in explaining it, but that was the idea her words conveyed to my mind, and there was no consideration, she said, and there was nothing to show it. And she referred me to Mr. Hogan for further information regarding it. And afterwards I went to see him and we talked about it, and he told me, as he testified to-day, that he fixed it up. That conversation occurred after I bought and paid for the property, not long afterwards."

He further testified that before he bought he had examined the abstract and the title and knew that the deed of trust had been satisfied on the records. He also

said he knew of the *lis pendens,* and that there was a garnishment suit pending against Josephine Hurt, but that "I don't think that affected the property."

He also testified that he paid fifteen hundred dollars and put in two residences valued at eleven hundred dollars, for the property; that there was a one thousand dollar incumbrance on the property, and a lot of claims against it, for street paving, etc., which he paid and deducted from the purchase price.

The case therefore resolves itself into this: The deed of trust was executed on June 4, 1892. It was not put on record until February 12, 1894, when Eunice caused it to be recorded, after she got a judgment for $500 alimony, against Walter, and it was then put on record by her without any authority from Walter and contrary to the directions of Josephine, when it was delivered to Walter, that it was not to be recorded until after her death. After Josephine was summoned as garnishee, Walter executed a deed of release of the deed of trust, and it was duly recorded on September 19, 1894. On February 8, 1895, the *lis pendens* was filed. On May 15, 1895, the Hamiltons bought the property from Josephine. On September 18, 1895, the garnishment case was tried. Hamilton asked to be made a party defendant, and it may be assumed that he was made such a party. Josephine withdrew her answer as garnishee. The plaintiffs dismissed that portion of their reply to the garnishee's answer which referred to the deed of trust and which asked that the property be charged with the lien of the deed of trust, and tried the case on the portion which related to the note, and obtained a general judgment against Josephine. Afterwards Eunice caused Walter's interest in the property to be sold under the judgment for alimony and plaintiffs became the purchasers. Afterwards the plaintiffs brought suit against Walter and Josephine, but did not make the Hamiltons parties thereto, and the deed of release was set aside, they were subrogated to the

rights of Walter under the deed of trust, the deed of trust was ordered foreclosed, and the plaintiffs became the purchasers at the foreclosure sale. Then this eject-ment suit was brought. The Hamiltons claimed to be bona fide purchasers for value and without notice, and asked that the plaintiffs be enjoined from further pro-ceedings against the land. The trial court entered judgment for defendants in the ejectment suit and dis-missed the defendants' equitable cross-bill, and the plaintiffs appealed.

## I.

There is no foundation in the facts disclosed by this record for the claim that the Hamiltons had any actual knowledge of any fraud whatever, in the release by Walter Hurt of the two thousand dollar deed of trust given to Josephine, nor of any facts that would put them upon inquiry in reference thereto. So far as the case made shows, the Hamiltons were innocent pur-chasers for a fair price, of the land, and they are chargeable only with a knowledge of the *lis pendens,* and whatever consequences might legally ensue there-from, and, if the plaintiffs' contention be correct, with being privies in estate with Josephine Hurt.

## II.

The first and chief question in this case is, what effect did the *lis pendens* have upon the Hamiltons' title?

*Lis pendens* is a notice of very ancient origin. It was common to both courts of law and equity even be-fore Lord BACON promulgated his twelve ordinances in chancery in relation thereto. Originally it was applied to real actions at common law, and it was held to be essential to the proper administration of justice, by pre-serving the *status quo* of the *res* pending the deter-mination of the case. [21 Am. and Eng. Ency. Law (2 Ed.), p. 605.]

But a purchaser of the property, *pendente lite,* "is affected with notice of everything set out in the pleadings and exhibits with sufficient certainty and distinctness to advise him of its bearing upon the property in litigation which is pertinent to the issues and to the relief sought, and of other material facts which means of information thus furnished, pursued with ordinary diligence and prudence, would bring to his knowledge; but not of any matters which are merely collateral, although they may incidentally appear." [Idem, p. 598.]

"It is a rule to preserve the situation as it existed when the litigation was begun, in order that effect may be given to the rights ultimately established therein." [Idem, p. 602, and cas. cit.; Herrington v. Herrington, 27 Mo. 560; O'Reilly v. Nicholson, 45 Mo. 160; Real Estate Sav. Inst. v. Collonious, 63 Mo. 290; Jacobs v. Smith, 89 Mo. 673; Turner v. Babb, 60 Mo. l. c. 347.]

It is essential that the litigation to which the *lis pendens* refers, shall result in a judgment or decree affecting the property described therein and within the issues made. [Idem, p. 608, and cas. cit.; Burgess v. Albert, 44 Mo. App. 558; Gordon v. Ritenour, 87 Mo. l. c. 59.]

"It has been generally held that the dismissal of an action or suit without a trial on the merits terminates the *lis pendens,* and persons who acquire interests in the property prior to the institution of a second action for the same purpose are not bound by the judgment or decree therein unless made parties." [Idem, p. 621, and cas. cit.]

A voluntary abandonment or discontinuance of the action destroys the *lis pendens.* [Hammond v. Paxton, 58 Mich. l. c. 398; Wortham v. Boyd, 66 Tex. l. c. 403.]

In Wortham v. Boyd, supra, the Supreme Court of Texas said: "It is a general principle of equity that one who purchases pending a suit in which the title to land, or a lien upon it, is involved, does so subject to the final judgment in the cause; his title must

abide the result of the suit, whether he be made a party or not. It shares the fate which would have befallen the title had it remained in his vendor. But the title of the *lis pendens* purchaser is not affected, unless the suit is brought to a successful termination against his vendor. [2 Pom. Eq., sec. 634.] Should it be ended by a dismissal, or abandonment by the adverse party, the rights of the purchaser remain as if the suit had never been commenced. No subsequent suit founded upon the same cause of action, much less one which seeks a different remedy for different reasons against the same land, can interefere with his title or bind it by the judgment rendered in the cause, unless he is made a party thereto.''

The statute of this State (sec. 4257, R. S. 1899) provides: ''In any civil action, based on any equitable right, claim or lien, affecting or designed to affect real estate, the plaintiff shall file for record with the recorder of deeds of the county in which any such real estate is situated, a written notice of the pendency of the suit, stating the names of the parties, the style of the action and the term of the court to which such suit is brought, and a description of the real estate liable to be affected thereby; and the pendency of such suit shall be constructive notice to purchasers of incumbrances'' [Held to be a misprint, and that the original bill said ''purchasers or incumbrancers.'' Turner v. Babb, 60 Mo. 1. c. 347] ''only from the time of filing such notice.''

In the light of these principles the solution of the effect of the *lis pendens* upon the Hamiltons' title is not difficult. The *lis pendens* was notice to the Hamiltons that a garnishment suit was pending in the circuit court of Randolph county by these plaintiffs against Walter Hurt, as defendant, and Josephine Hurt, as garnishee, and that the real estate here involved was liable to be affected thereby, and the pleadings in that case showed that Eunice had a judgment against Walter

for five hundred dollars, and that an execution against him had been returned *nulla bona,* and that Josephine had been summoned as garnishee of Walter, and had filed an answer denying any indebtedness to Walter, and that the plaintiffs' reply to that answer set up, first, that she owed Walter two thousand dollars, and a general judgment was asked against her for the amount of the judgment against Walter, and, second, that the note was secured by a deed of trust on this land, and they asked that the judgment against Josephine as garnishee be declared a lien on the land and that it be sold to satisfy the judgment.

Passing over the question whether in a garnishment proceeding under the statute a court of law could subrogate the plaintiffs to the rights of Walter under the deed of trust and decree the judgment against the garnishee to be a lien on the land, as a matter not necessary to the decision of this case, the fact appears that no such judgment was rendered in that case. On the contrary, the plaintiffs voluntarily dismissed all that portion of their reply that related to the land, and went to trial solely upon the question as to whether Josephine owed Walter anything, and the judgment rendered was a plain, personal judgment against Josephine.

The effect of this was to destroy the *lis pendens.* After the dismissal of the case as to the land, the judgment could have no more effect upon this land than upon any other land owned by Josephine. It took effect from the date of its rendition and was a statutory lien on all the land that she owned at that time. But it had no more effect upon the title of a purchaser of land from her, *pendente lite,* than an ordinary judgment in a plain action has upon land sold by the defendant pending the action and before judgment. The *lis pendens* was abandoned when the portion of the action relating to the deed of trust on the land was dismissed.

Thereafter Josephine's rights in the land, and those of the purchasers from her, were determinable

by the face of the records, unless affected or changed by direct proceedings to which she or the purchasers from her were parties.

This disposes of the question of *lis pendens* in this case.

## III.

The plaintiffs next contend that the Hamiltons are privies in estate with Walter and Josephine, and that as they purchased Walter's interest in the land at the sheriff's sale under execution upon the judgment for alimony and as they afterwards procured a decree against Walter and Josephine setting aside the deed of release and subrogating them to Walter's rights under the deed of trust and ordering the same foreclosed, and became the purchasers at the sale, their title to the land is superior to that of the Hamiltons.

It has already been shown herein that the Hamiltons were innocent purchasers for value and without notice of any fact, circumstance or fraud, connected with any of the transactions of the Hurts or with the land, except such as they were charged with by the *lis pendens* and as were shown by the records, and that the Hamiltons were not parties to the subsequent suit to set aside the deed of release.

From this premise it logically follows that even if plaintiffs' contention be true, that the release of the deed of trust by Walter to Josephine was intended to defraud Eunice and defeat her in the collection of her judgment against Walter, it could have no effect upon the Hamiltons' title.

In order to defeat the Hamiltons' title it was essential that the Hamiltons were parties to that fraud, and without regard to where the burden of proof properly lay in that respect, there can be no doubt that the Hamiltons have completely purged themselves of any fraud or knowledge of fraud in this matter. [Jacobs v. Smith, 89 Mo. 673; Natl. Tube Works Co. v. Machine

Co., 118 Mo. 365; Craig v. Zimmermann, 87 Mo. 475; Byrne v. Becker, 42 Mo. 264; Little v. Eddy, 14 Mo. 160; Howe v. Waysman, 12 Mo. 169.]

The Hamiltons were not parties to the suit to set aside the release of the deed of trust, and hence are not bound by the judgment in that case. Their title cuts back of that judgment, and is the better and the legal title so far as the records of deeds show on their face. Therefore, the plaintiffs necessarily failed in their ejectment.

This results in holding that the judgment of the circuit court, so far as it has been preserved for review by this court, is right, and it is therefore affirmed.

All concur.