SPACE PLANNERS ARCHITECTS, INC., E.T. Archer Corporation, Inc., Dave Kolb Grading, Inc., and Killian Construction Company, Inc., Plaintiffs–Respondents,

v.

FRONTIER TOWN–MISSOURI, INC., f/k/a Panther Mountain–Missouri, Inc., Defendant,

Brian SLY, Nelson Sly, and Helen Sly, Brian Sly, as Trustee, Tamara Sly, as Trustee, Harmon E. Burns, Tony Fernandez, Royal Nest Corp., and Venture Resources Liquidation Corp., Defendants–Appellants.

No. 25052.

Missouri Court of Appeals,
Southern District,
Division Two.

March 31, 2003.

Motion for Rehearing and Transfer Denied April 22, 2003.

Application for Transfer Denied July 1, 2003.

Gary Allman, Allman, Ingrum, Wilson & Akers, LLC, Branson, for appellants.

John E. Price, Carnahan, Evans, Cantwell & Brown, P.C., Springfield, for respondent Space Planners Architects, Inc.

Patrick B. Starke, R. Clay Hagedorn, Starke Law Offices, Blue Springs, for respondent E.T. Archer Corporation, Inc.

Lee J. Viorel, Paul Link, Franklin D. Romines, II, Husch & Eppenberger, LLC, Springfield, for respondent Dave Kolb Grading, Inc.

Richard E. Walters, Blackwell Sanders Peper Martin LLP, Springfield, for respondent Killian Construction Company, Inc.

KENNETH W. SHRUM, Judge.

This is a suit in which four corporate entities sought statutory liens on real estate for work and materials furnished per contracts with the land owner, Frontier Town–Missouri, Inc. ("Frontier"). Two of these lien claimants, Space Planners Architects, Inc. ("Architect") and E.T. Archer Corporation, Inc. ("Engineer"), sought liens pursuant to § 429.015.[1] Lien claimants Dave Kolb Grading, Inc. ("contractor Kolb"), and Killian Construction Company, Inc. ("contractor Killian"), sought mechanics' liens per § 429.010.[2]

---

**1.** All statutory references are to RSMo (2000), unless otherwise stated.

**2.** Section 429.010 is Missouri's traditional "mechanics' and materialmen's" lien statute, whereas § 429.015 (first enacted in 1971) provides lien protection for licensed or certified architects, engineers, and surveyors.

The trial court granted summary judgment favorable to the four lien claimants. Specifically, it granted their lien requests and declared their liens superior to the interests of the "Sly Group," investors in Frontier.[3] The Sly Group appeals, advancing various reasons why the respective lien claimants are not entitled to judgment as a matter of law. The judgment favorable to Architect and Engineer is reversed and remand is ordered. We affirm the judgment favorable to contractor Killian and contractor Kolb.

## FACTS AND PROCEDURAL BACKGROUND

In 1996, Frontier owned certain real estate parcels in Stone County that it planned to develop into a theme park. To begin this project, Frontier engaged the services of the four lien claimants, but did so at different times under separate contracts. Details of these contracts, when each lien claimant first worked for Frontier, and what work was performed are set out below, as needed, in the analysis of Sly Group's claims of trial court error.

Initially, Architect and Engineer filed a joint petition that sought recovery for services rendered and to impose a lien on the "Whorton" real estate tract. Contractors Kolb and Killian filed separate lawsuits. Like Architect and Engineer, contractor Killian sought to impose a lien on the Whorton tract, whereas contractor Kolb prayed for a lien on the Whorton tract plus parcels referred to as the "Stacy" tract, "Hicks" tract, "Davis" tract, and "Johnson" tract.[4]

As the litigation proceeded, the three separate suits were consolidated and Frontier ultimately ceased defending the claims being asserted. The Sly Group, however, continued to defend, at least in part. Specifically, the Sly group filed a written memorandum that contained their arguments on why summary judgment should not be entered for the respective lien claimants. They failed, however, to specifically admit or deny the "material facts" listed by the lien claimants in their motions for summary judgment.[5]

The trial court adjudged that contractor Kolb, Architect, and Engineer had a "mechanic's lien binding and subjecting the [Whorton tract]" and that contractor Killian had a mechanic's lien as to "any buildings, appurtenances and improvements" on the Whorton tract. After noting it was not resolving issues between the lien claimants, the court declared there was no just reason for delay pursuant to Rule 74.01(b), thus finalizing the judgment for purposes of appeal.[6] This appeal followed.

## STANDARDS OF REVIEW: SUMMARY JUDGMENT

The granting or denial of a motion for summary judgment is governed by the mandatory requirements of Rule 74.04.

**3.** The "Sly Group" litigants are Brian Sly, Nelson Sly, Helen Sly, Brian Sly, as Trustee, Tamara Sly, as Trustee, Harmon E. Burns, Tony Fernandez, Royal Nest Corp., and Venture Resources Liquidation Corp.

**4.** Detailed legal descriptions that appear adequate were used by the litigants for all involved real estate tracts. Some litigants, however, gave the parcels common names, i.e., the "Whorton," "Stacy," "Hicks," "Davis," and "Johnson" tracts. Moreover, a federal district court in New York entered a judgment in related litigation that used these names to refer to the subject real estate parcels. To be consistent and in an attempt at some brevity, we use the common names in this opinion.

**5.** By the time Sly Group hired its current lawyer, the deadline for making a response to the lien claimants' motions for summary judgment had passed

**6.** All rule references are to Supreme Court Rules (2002), unless otherwise stated.

*Wichita Falls Prod. Credit Ass'n. v. Dismang,* 78 S.W.3d 812, 814 (Mo.App.2002). When considering appeals from summary judgments, this court will review the record in the light most favorable to the party against whom judgment was entered, and we will accord the non-movant the benefit of all reasonable inferences from the record. *ITT Commercial Fin. v. Mid–Am. Marine,* 854 S.W.2d 371, 376[1,3] (Mo.banc 1993). "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* at 376[2].

The propriety of summary judgment is an issue of law; consequently, our review is essentially *de novo* wherein we are not required to defer to the trial court's judgment. *Id.* at 376[4]; *Wichita Falls,* 78 S.W.3d at 814. "The key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question." *ITT,* 854 S.W.2d at 380[12]. A non-moving party need respond to a summary judgment motion *only* when a movant has made a *prima facie* showing there is no genuine issue of material fact *and* he or she is entitled to a judgment as a matter of law. *Id.* at 381; *Wichita Falls,* 78 S.W.3d at 814. Even if a party fails to respond to a motion for summary judgment, we will not affirm its granting if it is not supported by the facts or the law. *Public Water Supply Dist. No. 16. v. City of Buckner,* 44 S.W.3d 860, 863[2] (Mo.App.2001).

## DISCUSSION AND DECISION

*POINTS I & II: Error In Awarding Lien To Architect and Engineer*

Sly Group's first and second points maintain that, even though they did not respond to the list of material facts contained in Architect's and Engineer's motions for summary judgment, the trial court erred in sustaining their motions for summary judgment. Sly Group argues that professional architects and engineers (or their firms) must register with Missouri's Board for Architects, Professional Engineers and Surveyors ("Board"), and if they fail to do so, they can neither enforce a contract for services in this state, nor can they show entitlement to a lien under § 429.015. In essence, Sly Group's position is that such registration is a statutorily-created condition precedent to a § 429.015 lien.

■ Next, Sly Group asserts that neither the petitions of Architect or Engineer, nor the list of undisputed facts within their summary judgment motions, demonstrates that the two entities were registered to practice their respective professions in Missouri. As such, Sly Group argues that the failure by Architect and Engineer to plead or prove the "registration" element of a § 429.015 lien precluded the trial court, as a matter of law, from finding those firms were entitled to a lien. We find this argument meritorious.

Any corporation that intends to do engineering or architectural work in Missouri must register with the Board by obtaining a certificate of authority. § 327.401.2;[7] *Maran–Cooke, Inc. v. Purler Excavating, Inc.,* 585 S.W.2d 38, 39–40 (Mo.banc 1979). A corporation that performs architectural or engineering services without registering, as required by § 327.401, is precluded from enforcing any contract for those services or recovering under any legal theory,

---

**7.** In relevant part, § 327.401.2 requires "[a]ny domestic ... or ... foreign corporation ... having as one of its purposes the practicing of architecture or professional engineering ... [to] obtain a certificate of authority for each profession named in the articles of incorporation...."

regardless of whether a benefit was conferred. § 327.461;[8] *Hosp. Dev. Corp. v. Park Lane Land,* 813 S.W.2d 904, 908 (Mo.App.1991); *Haith & Co. v. Ellers, Oakley, Chester & Rike, Inc.,* 778 S.W.2d 417, 421 (Mo.App.1989).

■ Through § 429.015 the legislature authorized courts to impose a lien on buildings, improvements, or land upon which architectural or engineering work has been done; yet, such lien can only be imposed for architectural or engineering corporations (or individuals) "registered" with Board. § 429.015.1;[9] *Maran–Cooke,* 585 S.W.2d at 40[3]. An architectural or engineering corporation that fails to register with Board simply has no lien to claim. *Id.* at 40. *See In Re Branson Mall, Inc.,* 970 F.2d 456 (8th Cir.1992) (holding that unregistered architectural firm performing per contract could not enforce § 429.015 lien even though the firm registered with Board after work was complete, but before filing for lien). Clearly, § 429.015 lien rights exist only for those who comply with chapter 327. *Maran–Cooke,* 585 S.W.2d at 40.

■ The right to a lien afforded to architects or engineers are purely creations of statute (§ 429.015) and did not exist at common law. *Id.* at 40[2]. What has been said about the burden of proof in mechanics' lien cases applies as well to § 429.015.1 lien claimants, namely, the party claiming a statutory lien bears the burden of proving compliance with essential elements of the lien statute at issue. *See, e.g., Patrick V. Koepke Constr., Inc. v. Woodsage Constr. Co.,* 844 S.W.2d 508 (Mo.App.1992).

■ Generally, a party with the burden of proof on an element of a cause of action must also plead that element. *Textron Financial Corp. v. Trailiner Corp.,* 965 S.W.2d 426, 429[1] (Mo.App.1998). This requirement must be shown "when a cause of action requires proof that a statutorily-created condition precedent was met[.]" *Id.* at 429[2]. In such instance, the "party with the obligation [to prove the condition precedent] must not only plead compliance, but must prove it affirmatively." *Id.*

Based on § 429.015, chapter 327 provisions, and cases discussed above, we conclude that compliance with § 327.401.2 by obtaining a certificate of authority from Board was an element of Architect's and Engineer's lien case, i.e., registration was a statutorily-created condition precedent that Architect and Engineer had to affirmatively plead, as well as prove. Further, a review of the record discloses they did not include all essential facts in either their pleadings or motions for summary judgment. Specifically, both Architect and Engineer failed to plead, and failed to include in their summary judgment mo-

---

**8.** In relevant part, § 327.461 provides: "Every contract for architectural or engineering . . . services entered into by any person who is not an architect or professional engineer . . . shall be unenforceable by the unregistered or unauthorized person, whether in contract, quantum meruit or other legal theory, regardless of whether a benefit has been conferred."

**9.** In pertinent part, § 429.015.1 provides:
"1. Every registered architect or corporation registered to practice architecture, every registered professional engineer or corporation registered to practice professional engi-

neering, . . . . who does any . . . architectural [or] engineering . . . work upon . . . or performs any . . . architectural [or] engineering . . . service directly connected with the erection or repair of any building or other improvement upon land under or by virtue of any contract with the owner . . . thereof . . . upon complying with the provisions of this chapter, shall have . . . a lien upon the building or other improvements and upon the land belonging to the owner . . . on which the building or improvements are situated, to the extent of one acre."

tion, a claim that they were registered with Board (as corporate entities) and had the certificate of authority required by § 327.401.2. Without that essential element being pleaded and proven, neither Architect nor Engineer showed themselves to be entitled to a judgment as a matter of law. Consequently, the trial court erred in sustaining their motions for summary judgment.

In so holding, we have considered but now reject arguments by Architect and Engineer that certain allegations in their pleadings and motions permit an inference that they were registered with Board. As to Architect, there are ambiguities and inconsistencies in its pleadings and motion for summary judgment that show the fallacy in its argument. Architect contracted with Frontier in 1998, yet when Architect filed its first pleading in 1999, it alleged it was "currently being registered to do business in the State of Missouri." From this, the only reasonable inference to be drawn is that Architect *was not* registered with Board when it contracted with Frontier.

We find confirmation for this view in Architect's amended petition filed in 2000. There, Architect alleged it now "was registered." This bespeaks a change in Architect's status between the time of its first petition and when the amended petition was filed.

Architect could have clarified its registration status in an affidavit by its president filed in support of its summary judgment motion. Architect's president, however, deftly avoided clarification by stating Architect "was from 1988 to the present a corporation in good standing in the State of Missouri, registered to practice architectural services." A sworn statement that Architect was a corporation in good standing merely connotes its ongoing corporate existence; it bespeaks nothing about being registered with or having a certificate of authority from Board.

■ We do not ignore Architect's claim that it provided uncontroverted proof of registration with Board via attachments to a supplemental memorandum filed with the trial court on March 13, 2002. The attachments are uncertified copies of an architect's license issued by Board to Meredith Walter Dudley (license No. AR 006539), valid through December 31 of the following years: 1991, 1994, 1995, 1997, 1999, 2001, and 2003.[10] Another attachment is an uncertified copy of a certificate of authority issued by Board to Space Planners Architects on March 30, 2000. This document authorized this corporate entity to engage in the professional services of architecture in Missouri while the certificate was in effect. These attachments, however, do not aid Architect for multiple reasons.

■ First, "Rule 74.04(e) by its own terms gives trial courts discretion to permit only affidavits to be supplemented." *Cross v. Drury Inns, Inc.,* 32 S.W.3d 632, 636[7] (Mo.App.2000). Supplementation of the motion is not authorized by the rule. *Id.* The *Cross* court also explained:

> "Rule 74.40(c) dictates a specific format for a motion and response in order to clarify the areas of dispute and eliminate the need for the trial or appellate court to sift through the record to identify factual disputes. All facts must come into the summary judgment record in the manner required by Rule 74.04(c)(1) and (2) that is, in the form of a pleading containing separately numbered paragraphs and a response addressed to those number paragraphs."

---

10. Dudley was president of the corporate entity, Space Planners Architects, Inc.

"When a movant needs to supplement the motion with new facts, the movant should withdraw the original motion and file a new or amended motion incorporating the additional evidence."

*Id.* at 636[8–10]. Here, the materials attached to the supplemental memorandum were not authorized by Rule 74.04(c) or 74.04(e). Moreover, the parties cannot waive non-compliance with Rule 74.04. *Id.* at 637[13].

 Second, only evidentiary materials that are admissible or usable at trial can sustain a summary judgment. *Partney v. Reed,* 889 S.W.2d 896, 901[22] (Mo. App.1994). Hearsay may not be relied upon to support a summary judgment. *Ganaway v. Shelter Mut. Ins. Co.,* 795 S.W.2d 554, 563[11] (Mo.App.1990). Since the attachments were hearsay, they would only be admissible at trial if certified as required by § 327.051.3. Because the attachments were not certified copies, they cannot be used as evidentiary support for the summary judgment favorable to Architect. *Partney,* 889 S.W.2d at 901.

 Assuming, arguendo, that this court waived Architect's non-compliance with Rule 74.04 and deemed any hearsay objection to have been waived, the attachments still do not support Architect's claim. To the contrary, they only add to the factual ambiguity and plethora of inconsistent evidence about a material fact, i.e., Architect's registration status with the Board. Architect insists that the license documents, as structured, could be read as registering both Meredith Walter Dudley and Architect with Board. We disagree, however, because language therein indicates that only one person or entity was registered, and the registrant was Dudley. This view is confirmed by a card that accompanied the license certificate that listed only Meredith Walter Dudley as the licensee. This is also consistent with statutory provisions that require an "individual" to obtain a "license" from Board, § 327.401.1, whereas a "corporation" must procure a "certificate of authority." § 327.401.2.

Here, the attachments suggest that Architect never had a certificate of authority to do architectural work in Missouri until March 2000. As indicated earlier, procurement of authority after the contract for professional services has been signed does not aid Architect. *See In re Branson Mall,* 970 F.2d 456.

When, as here, a summary judgment movant submits inconsistent evidence on material facts, the *prima facie* showing required for summary judgment is defeated. *Peet v. Randolph,* 33 S.W.3d 614, 619[15] (Mo.App.2000). Contrary to Architect's argument, it has failed to show itself entitled to summary judgment as a matter of law. Sly Group's first point has merit.

The following reproduces Engineer's argument on this issue:

"[Engineer] stated in its Motion for Summary Judgment that it obtained a Mechanic's Lien for its work on the property in question. (l.f.p–1014, Vol.6). Inherent in that statement is the allegation that [Engineer] was in compliance with the requirements of the mechanic's lien statute, one of which is the requirement that [Engineer] be licensed."

This court has reviewed the portions of the legal file cited by Engineer and finds no such statement there. Moreover, we have reviewed Engineer's pleadings and motion for summary judgment and find no statement from which it could reasonably be inferred that Engineer was registered with Board or had obtained a certificate of authority from Board. Simply stated, Engineer's argument is unsupported by the record.

■ Because Points I and II have merit, the judgment favorable to Architect and Engineer must be reversed and the cause remanded.[11] Upon remand, the trial court, in its discretion, may allow an amendment to the pleadings.

*Point III: Was Killian Lien Superior To Sly Group Claim?*

■ Sly Group's third point, which has two prongs, maintains generally that the trial court erred in entering summary judgment for contractor Killian. In Point III(A), Sly Group argues Killian "was not entitled to a judgement superior to the title of the Sly Group because a notice of lis pendens predated the date of first work performed by Killian and any Killian lien took subject to the ultimate title of the Sly Group." Except for conclusory statements, however, Sly Group has not supported Point III(A) with an argument in the argument part of their brief, nor have they cited on-point authority regarding lis pendens. A point relied on left unsupported by relevant authority or argument beyond mere conclusions presents nothing for appellate review. *Beatty v. State Tax Comm'n.,* 912 S.W.2d 492, 498–99 (Mo. banc 1995); *Wright v. Barr,* 62 S.W.3d 509, 528[25] (Mo.App.2001). Even so, we have reviewed Point III(A) *ex gratia* and find it has no merit.

■ "Recording a notice of lis pendens is authorized by § 527.260 in a civil suit making equitable claims involving real estate."[12] *Birdsong v. Bydalek,* 953 S.W.2d 103, 113 (Mo.App.1997). A lis pendens filing gives "constructive notice to purchasers or encumbrancers" of any "equitable right, claim or lien affecting or designed to affect real estate." § 527.260; *Hope v. Blair,* 105 Mo. 85, 16 S.W. 595, 597 (1891). A lis pendens notice must contain a "description of the real estate liable to be affected thereby." § 527.260. The potential protection afforded by a lis pendens filing extends only to property described in the notice; it does not affect other real estate owned by a person named in the notice. *State ex rel. State Highway Comm'n. v. Harris,* 417 S.W.2d 29, 32[11] (Mo.App. 1967).

On March 30, 1999, Sly Group filed a "Notice of Lis Pendens" in the Stone County Recorder's office. The notice recited that Sly Group had sued Frontier and other defendants in the Federal District Court of the Southern District of New York, number 98 Civ. 4407. It also recited that an injunction had been issued affecting land located in Stone County, Missouri, specifically, the "Stacy," "Hicks," "Davis," and "Johnson" tracts.[13] The March 30, 1999, lis pendens notice, however, *did not* list the Whorton tract; consequently, it did not give Killian notice, constructive or otherwise, that Sly Group was asserting an equitable right, claim, or lien to the Whorton tract. As such, the March lis pendens notice provided no basis for claiming the trial court erred in imposing a mechanic's lien favorable to Killian on the Whorton tract.

---

11. We decline to address Sly Group's additional allegation of error, namely, that any lien granted Architect or Engineer had to be limited to one acre, per § 429.015. At this point, any resolution of that issue would be merely advisory in nature. "Appellate courts do not render advisory opinions." *MECO Systems v. Dancing Bear Entm't,* 42 S.W.3d 794, 809[29] (Mo.App.2001).

12. In pertinent part, § 527.260 provides: "In any civil action, *based on any equitable right, claim or lien,* affecting or designed to affect real estate, the plaintiff shall file for record ... a written notice of the pendency of the suit...." (Emphasis supplied.)

13. The lis pendens notice used full legal descriptions, not common names. *See* n. 4.

On December 8, 1999, Sly Group filed another lis pendens notice in Stone County. This document described the Whorton tract and notified any "purchaser or encumbrancer" thereof that the New York Federal District Court, in number 98 Civ 4407, had issued a temporary order on November 25, 1998, enjoining Frontier from selling or placing liens on such real estate. Although Killian's summary judgment motion asserts (without contradiction) that the work and materials for which it seeks a lien were provided between May 25, 1999, and December 14, 1999, Sly Group argues there is no evidence that Killian ever "commenced" a building on the Whorton tract. Continuing, Sly Group asserts that without such evidence, Killian's lien could not "relate back" and attach when the first work or material was furnished, *see H.B. Deal Const. Co. v. Labor Disc. Center, Inc.*, 418 S.W.2d 940, 951 (Mo.1967); consequently, Killian's lien could only attach at the time it was filed, i.e., March 16, 2000. With its argument thus structured, Sly Group apparently claims its December 1999 lis pendens notice (which predated Killian's lien filing) created a lien right in it superior to that of Killian. This argument, however, wholly misconceives the effect of the December 1999 lis pendens filing.

"It is essential that the litigation to which the lis pendens refers shall result in a judgment or decree affecting the property described therein, *and within the issues made.*" *Bristow v. Thackston*, 187 Mo. 332, 86 S.W. 94, 98 (1905) (emphasis supplied). Stated otherwise, the filing of a lis pendens notice does not create a lien; rather, filing of a judgment itself is the operative act. *See In re Miller*, 39 B.R. 145, 147 (W.D.Mo.1984).[14] For a lis pendens to have prospective effect, the judgment contemplated must adjudicate an "equitable right, claim or lien, affecting or designed to affect [the] real estate" in question. *Bristow*, 86 S.W. at 98–99. A lis pendens filing is deemed abandoned and destroyed if the party filing the notice voluntarily relinquishes its "equitable right, claim, or lien affecting or designed to affect [specifically described] real estate[ ]" and consents to a "plain, personal judgment against" a defendant. *Id.* at 99. As explained in *Bristow*:

> "After the dismissal of the case as to the land, the [plain, personal] judgment could have no more effect upon this land than upon any other land owned by [the defendant]. It [the general judgment for damages] *took effect from the date of its rendition,* and was a statutory lien on all the land that she owned at that time But it had no more effect upon the title of a purchaser of land from her pendente lite than an ordinary judgment in a plain action has upon land sold by defendant pending the action, and before judgment."

*Id.* (emphasis supplied).

Here, the New York federal district court rendered a judgment in number 98 Civ. 4407 on July 10, 2000. That judgment was filed in the Stone County case as part of Sly Group's opposition to contractor Kolb's motion for partial summary judgment and is now before this court as part of the legal file. The New York court, via its judgment, did the following: First, it ordered Frontier and entities affiliated with it to convey the "Stacy," "Hicks," "Davis," and "Johnson" tracts to Venture Resources Liquidation. This was based upon a stipulation of the parties that those tracts had been fraudulently conveyed by some of the defendants. Second, the New

---

**14.** Although *In re Miller* dealt with an Alaskan lis pendens statute, the language thereof is sufficiently analogous to Missouri law to make the *Miller* case instructive.

York court entered a general judgment against all defendants for $900,000. This, too, was pursuant to the litigants' stipulated settlement, which was approved by the New York court. Wholly absent from the court approved settlement and resultant judgment is any mention or granting of injunctive or other equitable relief designed to affect the Whorton tract. Based on what this record discloses, we find Sly Group abandoned and destroyed any claim to priority over Killian's mechanic's lien via the lis pendens notice when, on July 10, 2000, it stipulated and agreed to a general judgment against defendants for $900,000 without any equitable relief being granted that affected or was designed to affect the Whorton tract. *See Bristow,* 86 S.W. at 99. At best, the New York judgment could only take effect from the date of its rendition, i.e., July 10, 2000. *Id.* This being a general judgment, it would not relate back to the time of the December 8, 1999, lis pendens filing; consequently, Killian's mechanic's lien (filed March 16, 2000) had priority. *Id.* The trial court did not err as Sly Group contends in Point III(A). Point denied.

In Point III(B), Sly Group urges reversal of Killian's judgment, alleging that genuine issues of material fact exist about whether the work and materials for which Killian sought a lien "were . . . properly . . . lienable." Its argument in support of this point is terse (nineteen lines) and largely conclusory in nature. First, it recounts that Killian's lien statement refers to three "areas of claims," i.e., a pre-construction services amount ($200,000), an itemized cost-of-work amount ($91,380.89), and a percentage of contractor Kolb's bill ($12,069.33). It then claims the $200,000 did not "represent any labor, work, or materials that went into the building but merely a down payment for work that was to be done in the future, as can be seen in

Article 4.1.1 of Killian's contract with Frontier." Without further development or explanation, Sly Group continues: "Likewise, the claim for $91,380.89, as observed in the itemized statement illustrates many items claimed that did not go into a building or improvement." Next, Sly Group cites *Brownstein v. Rhomberg–Haglin and Associates, Inc.,* 824 S.W.2d 13 (Mo.banc 1992), for the proposition that the "the legislature did not intend a mechanic's lien to attach where none of the labor or materials of the builder were used in the improvement of the property. To qualify (for a lien) the person seeking the lien must have provided in his professional capacity either labor or materials used for improving the land." *Id.* at 17. From this, Sly Group claims reversal is mandated as "[t]here is a genuine issue of a material fact as to whether or not these material[s] went into any building."

Not only has Sly Group left Point III(B) undeveloped beyond conclusory assertions, its argument ignores Killian's unchallenged factual allegations about the labor and materials for which it claimed a lien. Specifically, Killian's summary judgment motion alleged that (1) beginning May 25, 1999, and continuing through December 14, 1999, it performed work and furnished materials on the Whorton tract pursuant to a contract with Frontier; (2) all of the services and materials thus furnished "were used and/or incorporated into the work performed by Killian, or the value of the work was consumed in the construction project[;]" (3) Killian periodically sent Frontier invoices that itemized the services and materials furnished and expenses incurred by Killian; (4) exhibit B attached to the affidavit of Mike Waters, vice-president of Killian, contained true and accurate copies of such invoices; and (5) as of December 14, 1999, Frontier owed Killian $193,450.22 for services and materials furnished by Killian on the Whorton property.

These factual allegations, together with the affidavits and documents supportive thereof, established a *prima facie* connection between the labor and materials furnished and improvement of the Whorton tract. Once Killian made a *prima facie* showing on this issue, Sly Group had a specific burden. It could not rest upon the mere allegations or denials in its pleadings, but had to respond by affidavits that set forth specific facts showing there was a genuine issue for trial. Rule 74.04(c)(2); *Fetick v. American Cyanamid Co.*, 38 S.W.3d 415, 419[7] (Mo.banc 2001). Because Sly Group failed to respond, the trial court could accept Killian's allegations as true, *Pendergist v. Pendergrass*, 961 S.W.2d 919, 923 (Mo.App.1998), and conclude that the work and materials for which Killian sought a lien were lienable because it was shown to be an integral part of the construction plan. *See Vasquez v. Village Center, Inc.*, 362 S.W.2d 588, 594 (Mo.1962). Point III(B) is denied.

*Point IV: Was Kolb Lien Superior To Sly Group Claim?*

■ Sly Group's fourth point asserts the trial court erred in entering summary judgment for contractor Kolb. For the most part, it simply reprises arguments made in Point III and contends those arguments mandate reversal of the judgment for Kolb. For instance, Point IV(A) maintains Kolb "was not entitled to a judgement superior to the title of the Sly Group because a notice of lis pendens predated the date of first work performed by Kolb

and any Kolb lien took subject to the ultimate title of the Sly Group."

As stated earlier, Kolb was only awarded a mechanic's lien on the Whorton tract. The March 1999 lis pendens did not describe the Whorton tract; consequently, the March filing cannot be a basis for claiming Sly Group had a lien on that tract superior to Kolb. *See* Point III(A). Regarding the December 1999 lis pendens, a judgment was never entered in the federal case that gave Sly Group equitable relief as to the Whorton tract. At best, the New York judgment only created a general lien against the Whorton tract as of the date of the rendition of the judgment (July 10, 2000). *See Bristow*, 86 S.W. at 98–99. Kolb's lien notice was filed January 10, 2000; consequently, the trial court did not err when it found Kolb's lien superior to any interest Sly Group had in the Whorton tract. Point IV(A) is denied.[15]

■ In Point IV(B), Sly Group urges reversal because Kolb's "claim was for grading work which was not represented to be for labor, work or material furnished for any building, or the commencement of any building thereby not establishing any date on which Kolb's lien would attach, raising a genuine issue of material fact and indicating that Kolb was not entitled to judgment as a matter of law." The answer to this argument is found in *Vasquez*, 362 S.W.2d 588. In *Vasquez*, certain grading and leveling work was done upon property in preparation for the erection of a shopping center, but no further construction

15. In the argument section beneath Point IV(A), Sly Group contends that "from the pleadings and evidence, [it would appear] Kolb did work on all the land, for which it claims a price, [but] has transferred the entire price to only a portion of the land." Continuing, Sly Group insists that "[t]he issue of how much of the claim applied to the [Whorton] [t]ract remains as an issue of genuine material fact, that has yet to be resolved." This

hypothesis of error does not appear in any of Sly Group's points of error. In twelve lines of discussion, Sly Group cites no cases and makes only conclusory arguments. We are obliged to determine only those questions raised in the points relied on. Issues raised only in the argument portion of the brief are not preserved for review. *Boatmen's Bank of Southern Mo. v. Foster*, 878 S.W.2d 506, 509[5] n. 4 (Mo.App.1994).

was had upon the property. The supreme court held this work was lienable within the meaning of § 429.010 as it was an integral part of the construction plan. *Id.* at 594. The facts in *Vasquez* and the facts here are not materially different. Sly Group's Point IV(B) is denied.

The judgment for Killian Construction Company, Inc. and Dave Kolb Grading, Inc., is affirmed. The judgment for Space Planners Architects, Inc., and for E.T. Archer Corporation, Inc., is reversed and the cause remanded.

PARRISH, J., and RAHMEYER, C.J., concur.